Hay, Judge,
delivered the opinion of the court:
The claimant in this case, the Illinois Central Railroad Company, is suing for the recovery of $49.19, it being the amount deducted from the sum of $93.25, the amount charged by the claimant for the transportation of two horses and an enlisted man, in whose charge they were, from Texas City, Tex., to Murpheysboro, Ill. The two horses were the projiertjr of First Lieut. Guy L. Qualls, Medical Corps, U. S. Army. Lieut. Qualls had been ordered for service over the seas. The defendant demurred to the petition on the ground that the allegations of the petition do not state a cause of action.
It is claimed by the plaintiff that the defendant is liable for the amount claimed by it, because the two horses transported by the plaintiff were the property of an officer of the Army required to be mounted and entitled to two mounts, and that by virtue of paragraph 1098 of the Army Regulations he was entitled to have the horses transported at Government expense.
The act approved April 27, 1914, contains this provision:
“ Hereafter private mounts of officers in excess of the authorized mounts may be shipped on Government bill of lad- *57 lug with authorized mounts and reimbursement collected for transportation charges on such excess mounts.”
This statute by its terms applies to mounts in excess of the authorized mounts of officers and plainly applies to officers who are changing stations, and has no relation to authorized mounts being shipped by officers who are ordered “ over the seas,” to their homes, or to any other place in the United States. Indeed, the enactment of this law goes to show that it was necessary to have the authority of law for the transportation of excess mounts on change of station, and that such transportation could not legally be provided for by regulation. If that was necessary, then certainly it would appear that the transportation of privately owned horses to points in the United States must be provided for by law, and that no regulation with respect to such transportation is legal.
It is true that paragraph 1098 of the Army Regulations does provide as follows:
“ 6. Officers ordered for extended service over the seas or to Alaska, if they so desire, may have their authorized mounts transported from their old stations to any designated point in the United States for safe-keeping, and upon their return transported to their new stations in the United States.”
In the absence of any statute authorizing the payment for the transportation of horses which are the property of officers of the Army and not the property of the United States, and in the absence of any provision in the appropriation acts, can the Secretary of War by the promulgation of a regulation bind the Government for the payment of the transportation of horses, the private property of Army officers?
This court has repeatedly passed upon the effect of regulations of the executive departments. It has uniformly held that such regulations could only have the force and effect of law when they are not in contravention to existing law and when they are promulgated for the purpose of carrying into effect the law in respect to which they are promulgated.
Eegulations of executive departments are for the government of the conduct of their clerks and officers, the distribu *58 tion and performance of their business, and to the detail of service; but even so, regulations must not be inconsistent with law, but must conform to the law. Nor can the head of an executive department nor the President exercise legislative power or authority by regulation when it is clear that the power so exercised is purely legislative. In Symonds’ case, 21 C. Cls., 148, 152, it is said:
“ The regulations of the Army and the regulations of the Navy are given the force and effect of law when they apply to mere detail of service which has not been regulated by positive enactment.”
“ The authority of the President to make regulations is subject to the condition, necessarily implied, that they must be consistent with the statutes which have been enacted by Congress, and must be in execution of and supplementary to, but not in conflict with, the statutes.” Romero’s case, 24 C. Cls., 331, 338.
“ The purpose of a regulation of an executive department is to carry into effect the law in respect to which it may be promulgated.” Laurey’s case, 32 C. Cls., 259, 266. In the same opinion it is asserted that when rights, duties, and obligations are defined by a statute they can not be taken away or abridged by the regulations of an executive department.”
“It is fundamental in constitutional law that the lawmaking power is exclusively in Congress and can not be delegated to any other department. Laws are sometimes dependent in their enforcement upon a condition to be ascertained and determined by some persons having executive power, but that exception to the almost uniform operation of all laws is not a grant of legislative power in derogation of the function of the legislature.” Dunlap's case, 33 C. Cls., 135, 161.
A regulation contrary to law is no regulation at all. Sherlock’s case, 43 C. Cls., 161, 165.
In Freeman’s case, 3 How., 557, 567, the Supreme Court of the United States says:
“ The Army Regulations derive their force from the power of the President as commander in chief, and are binding upon all within the sphere and scope of his legal and constitutional authority. The Army Kegulations, when sane- *59 tioned by the President, have the force of law, because it is done by him with the authority of the law.”
In Glavey v. United States, 182 U. S., 595, 605, the principle is thus stated:
“ The authority of the Secretary to issue * * * regulations * * * with the approval of the President, m reference to matters connected with the Naval Establishment, is subject to the condition, necessarily implied, that they must be consistent with the statutes enacted by Congress.”
We have been unable to find any authority or even suggestion that the heads of departments can, by regulation, require from the Government the payment of money for any purpose not specifically authorized by law.
The court is therefore of opinion that the regulation above quoted is invalid and of no effect.
Section 161, Revised Statutes, reads as follows:
“ The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property appertaining to it.”
The act approved March 1, 1875, Supplement Revised Statutes, volume 1, 68, provides:
“And the President is hereby authorized to make and publish regulations for the government of the Army in accordance with existing laws.”
Any regulation within the scope of the statutes above cited would have the force and effect of law. But it certainly will not be asserted that under the provision of these statutes the Secretary of War could by regulation fix the compensation of any officer or clerk in his department or that he could provide by regulation for allowances to be paid either in money or in kind to any officer or that he could by regulation fix the amount of mileage for officers or travel pay for enlisted men. If he could not do any of these things by regulation it follows that he could not by a regulation bind the Government to pay for the transportation of horses, the private property of officers of the Army.
*60 The plaintiff states that the service performed by it was done at the request and instance of the defendant, through its agent, Lieut. Col. C. B. Krauthoff, Quartermaster Corps, and that therefore the defendant is bound to pay the charges for this service. But the defendant is not bound by the illegal acts of its agent. An agent without authority to do so can not bind the principal. In this case no one was clothed with authority to bind the defendant for the pay of transporting horses which were the private property of officers of the Army.
The court being of opinion that the demurrer interposed by the defendants should be sustained, it is adjudged, ordered and decreed that said demurrer be, and the same is, hereby sustained, and the plaintiff has thirty (30) days within which to amend its petition as it may be advised.
All the judges concur.